# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **BISMARK KWAKU TORKORNOO,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil No. PJM 15-2445 |
| | * | |
| **JUDGE CYNTHIA CALLAHAN,** *et al.* | * | |
| | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Bismark Kwaku Torkornoo, *pro se*, has sued Judge Cynthia Callahan, Associate Judge of the Montgomery County Circuit Court of Maryland, and Master Clark Wisor, Family Master at the Montgomery County Circuit Court, under 42 U.S.C. § 1983, alleging violations of Torkornoo's federal constitutional rights during certain family law proceedings. Specifically, Torkornoo alleges that Judge Callahan and Master Wisor failed to afford him due process in a state court divorce and child custody dispute. However aggrieved Torkornoo may feel as a result of the actions of these two judicial officers, this action for compensatory and punitive damages[1] against both Judge Callahan and Master Wisor is **DISMISSED WITH PREJUDICE**.

---

[1] At the end of his Amended Complaint, Plaintiff also "requests" the Court to exercise "supplemental jurisdiction" under 28 U.S.C. § 1367 over his claims (i) to enforce a Montgomery County Circuit Court Judgment against his ex-wife, and (ii) to issue an order removing his family law case from Judge Callahan and Master Wisor. These claims are presumably within the purview of Maryland state law. Given that the Court denies Torkornoo's § 1983 action – the only claim over which the Court has original jurisdiction according to the facts alleged – it declines to consider any supplemental state law claims. 28 U.S.C. § 1367(c).

**I.**

In his Amended Complaint, Torkornoo describes a number of grievances related to Judge Callahan and Master Wisor's actions in Family Law Case No. 71419 in the Circuit Court of Montgomery County, Maryland. Torkornoo claims that Judge Callahan and Master Wisor "acted beyond the jurisdictions of the Constitution" when they "created hostility, edged out plaintiff and denied him equity multiple times in the appearance of fraud resulting to: (i) loss of his freedom and liberty to his children; (ii) loss of the fair share in equity from the proceeds of the sale of former marital property; (iii) denial of equity against the appearance of Ms. Torkornoo's unjust aggression toward plaintiff's rights under 3/25/2009; (iv) denial of equity against the appearance of Ms. Torkornoo's unjust aggression toward 8/12/2010 modified custody order; (v) denial of equity against the appearance of Ms. Torkornoo's unjust aggression toward 11/21/2012 modified custody order; and (vii) denial of equity to enforce the monetary judgment against Ms. Torkornoo as to the 12/21/2012 and 4/172013 [sic] orders."  Am. Compl. ¶ 6.

At various points throughout the Amended Complaint, Torkornoo also objects to Judge Callahan's consideration of particular evidence, such as Torkornoo's ex-wife's testimony, which Torkornoo labels as "false." *Id.* ¶¶ 9, 19. Plaintiff takes particular issue with Judge Callahan's alleged statement that Torkornoo was "very angry with" his "ex-wife" and wants "retribution" when Judge Callahan signed an order to enforce a monetary judgment against him. *Id.* ¶ 214. Torkornoo further protests various actions taken by Master Wisor throughout the course of the family law proceedings, including providing Oral Recommendations to Judge Callahan. *See, e.g., id.* ¶¶ 28-29, 32, 34-37, 79. Finally, Torkornoo raises a host of complaints against other individuals involved in the proceedings, including a property appraiser who appears to have

assessed the real market value of certain property in dispute and two social workers investigating domestic abuse allegations. *See, e.g., id.* ¶¶ 32-33, 35-45.

In sum, Torkornoo's Amended Complaint amounts to a catalogue of the reasons why the outcome of Family Law Case No. 71419 was, in Torkornoo's view, flawed and unjust. In no sense does this catalogue amount to a cognizable claim for compensatory and punitive damages against Judge Callahan and Master Wisor under 42 U.S.C. § 1983.

## II.

Section 1983 provides a cause of action against any person who, "under color of" state law, deprives an individual of "any rights, privileges, or immunities" guaranteed by the federal Constitution or federal law. 42 U.S.C. § 1983. Yet, it is well-established that an individual's ability to bring a § 1983 claim for money damages against a judge is restricted by the doctrine of absolute judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). In general, absolute judicial immunity bars any action for money damages against individual judicial defendants when the judge (1) is performing a judicial act, and (2) has jurisdiction over the subject matter. *See Forrester v. White*, 484 U.S. 219, 225-29 (1988); *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

The Supreme Court has defined the class of judicial acts subject to the rule of absolute judicial immunity by contrasting "judicial" acts with acts "that simply happen to have been done by judges." *Forrester*, 484 U.S. at 227.  Non-judicial acts include "administrative" decisions like the demotion and firing of employees. *Id.* at 229. In contrast, "paradigmatic judicial acts" – subject to the protection of the absolute judicial immunity doctrine – are those "involved in resolving disputes between parties who have invoked the jurisdiction of a court." *Id.* The Court has also clarified that absolute judicial immunity applies "however erroneous the [judicial] act

may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger*, 474 U.S. at 199-200 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1872)). Further, the Supreme Court has held that, for purposes of the absolute immunity doctrine, a judge should be viewed as acting within his or her jurisdiction unless he or she has acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 351). Indeed, as the Supreme Court has explained, "the scope of the judge's jurisdiction must be construed *broadly*." *Stump*, 435 U.S. at 356 (emphasis added).

Notably, the absolute judicial immunity doctrine extends to protect "certain others who perform functions closely associated with the judicial process," such as "federal hearing examiner[s]," "administrative law judge[s]," "federal and state prosecutors," "witnesses who testify in judicial proceedings," and "grand jurors." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see also Honour v. Cooper*, 174 Fed. App'x 782 (2006) (per curiam) (noting that "both courts *and their staff* are entitled to judicial immunity") (emphasis added).

## III.

Given the well-established precedent that "judges have long enjoyed a comparatively sweeping form of immunity" from claims for money damages, *Forrester*, 484 U.S. at 225, Torkornoo's § 1983 action against Judge Callahan is clearly not viable. As Torkornoo details throughout his Amended Complaint, Judge Callahan presided over a family law dispute, hearing and considering evidence and issuing orders. However allegedly "erroneous" Judge Callahan's "acts" in this regard may have been, and however allegedly "injurious" they may have been or seemed to be to Torkornoo, *see Cleavinger*, 474 U.S. at 199-200, Judge Callahan was clearly performing "judicial acts" in resolving Torkornoo's family law dispute.

Further, Judge Callahan, in acting in her role as Montgomery County Circuit Court Judge, presided over a domestic relations and child custody dispute over which she almost certainly had jurisdiction. MD. CODE ANN. CTS. & JUD. PROC. § 1-501 (LexisNexis 2013) (providing that circuit courts have "full common-law and equity powers and jurisdiction in all civil and criminal cases within the county").[2] Despite his arguments to the contrary, Torkornoo even seems to acknowledge the propriety of Judge Callahan's jurisdiction when he states at the beginning of his Amended Complaint that Judge Callahan and Master Clark Wisor are both "state judicial officials" who "adjudicated" and were "specially assigned" to "exercise jurisdiction" over Torkornoo's "family law case." Am. Compl. ¶ 3. Judge Callahan is undeniably shielded from Torkornoo's § 1983 claim by absolute judicial immunity.

For the same reasons that Judge Callahan is protected by judicial immunity, so, too, is Master Wisor, the Family Law Master assigned to Torkornoo's case. Under the Maryland Rules of Court, "standing masters" (such as family law masters) are officers of the court appointed to assist a court in presiding over a specific proceeding. Md. Rule 2-541. In performing his duties as a Family Law Master and officer of the court under Judge Callahan, Master Wisor was clearly performing functions "closely associated with the judicial process," akin to the roles of "hearing examiner[s]" or "administrative law judge[s]." *Cleavinger*, 474 U.S. at 200. At the very least, Master Wisor would qualify as judicial "staff" "entitled to judicial immunity." *Honour*, 174 Fed. App'x at 782.   The absolute judicial immunity which clearly protects Judge Callahan, as explained above, thus also applies to Master Clark Wisor, the court officer working under her.

---

[2] Torkornoo is a resident of Virginia. Am. Compl. ¶ 10. Neither the residency of Torkornoo's ex-wife nor the locus of Torkornoo's marriage to his ex-wife are clear from Torkornoo's allegations. However, nowhere in the Amended Complaint does Torkornoo allege that Judge Callahan's jurisdiction was improper due to the residency status of the parties or the geographic location of the family law issues in dispute. Rather, Torkornoo's allegations about lack of jurisdiction stem from his belief that Judge Callahan and Master Wisor committed "fraud" in the "procurement of jurisdiction." *Id.* ¶ 14. However, the Court could not locate any facts in the Amended Complaint to support Torkornoo's conclusory allegation that Judge Callahan and Master Wisor fraudulently acquired jurisdiction over this family law case.

Given that both Judge Callahan and Master Wisor's alleged actions in Torkornoo's Amended Complaint fall within the purview of the absolute judicial immunity doctrine, Torkornoo's § 1983 claim for money damages against these individuals is barred. For this reason, Torkorno's Amended Complaint is **DISMISSED WITH PREJUDICE**. Torkornoo's requests for leave of the Court to file additional Amended Complaints are **DENIED** and Torkornoo shall file no further pleadings in this Court involving the matters complained of here.

A Final Order of Judgment will **ISSUE**.

**/s/**

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**September 15, 2015**